```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
H. JI,

                        Plaintiff,
                                                                    MEMORANDUM
            v.                                                      AND ORDER
                                                                    24-CV-4815-SJB
U.S. CITIZENSHIP AND IMMIGRATION
SERVICES, et al.,

                        Defendants.
-----------------------------------------------------------------X
```

**BULSARA, United States District Judge:**

Plaintiff H. Ji filed this action under the Administrative Procedure Act ("APA") and the Mandamus Act against Defendants United States Citizenship and Immigration Services ("USCIS"); its New York Asylum Office; Joseph B. Edlow, Director of USCIS;[1] Kristi Noem, Secretary of the U.S. Department of Homeland Security; Ted H. Kim, Associate Director of the USCIS Refugee, Asylum, and International Operations Directorate; Matthew Varghese, Director of the New York Asylum Office; and the U.S. Attorney's Office (collectively, "Defendants") seeking to compel adjudication of his asylum application, which has been pending since February 28, 2022. (Am. Compl. dated Feb. 14, 2025 ("Am. Compl."), Dkt. No. 13 ¶ 45). Defendants have moved to dismiss. (Defs.' Mot. to Dismiss dated June 3, 2025 ("Defs.' Mot. to Dismiss"), Dkt. No. 23-1). For the reasons explained below, Defendants' motion to dismiss is granted in part and denied in part.

---

[1] The Clerk of Court is respectfully directed to substitute Joseph B. Edlow for Andrew J. Davidson in the caption of this case. *See* Fed. R. Civ. P. 25(d); *Leadership*, U.S. Customs & Immigr. Servs., https://perma.cc/2WGW-FX3M (last visited Jan. 7, 2026).

STANDARD OF REVIEW

"To survive a motion to dismiss [pursuant to Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain more than "naked assertion[s] devoid of further factual enhancement." *Id.* (quotations omitted). In other words, a plausible claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; Fed. R. Civ. P. 8(a)(2). "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The determination of whether a party has alleged a plausible claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

This pleading requirement "does not impose a probability standard at the motion-to-dismiss stage." *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 77 (2d Cir. 2025) (noting that plausibility does not equate to probability). And "on a Rule 12(b)(6) motion it is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives. Assuming that [plaintiff] can adduce sufficient evidence to support its factual allegations, the choice between or among

plausible interpretations of the evidence will be a task for the factfinder." *Id.* (quotations omitted).

For the purpose of this motion, the Court is "required to treat" the Plaintiff's "factual allegations as true, drawing all reasonable inferences in favor of [Plaintiff] to the extent that the inferences are plausibly supported by allegations of fact." *In re Hain Celestial Grp., Inc. Secs. Litig.*, 20 F.4th 131, 133 (2d Cir. 2021). The Court "therefore recite[s] the substance of the allegations as if they represented true facts, with the understanding that these are not findings of the court, as we have no way of knowing at this stage what are the true facts." *Id.*

In addition to the Amended Complaint, the Court considers documents that are incorporated by reference, documents that are integral to the pleading, and documents of which the Court may take judicial notice. *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010); *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) ("A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." (quotations omitted)). To that end, "[w]hen considering a motion made pursuant to Rule 12(b)(6)[,] [the Court] may take judicial notice of documents from official government websites." *Rynasko v. N.Y. Univ.*, 63 F.4th 186, 191 n.4 (2d Cir. 2023) (quotations omitted). "Before taking judicial notice of a document, a district court must consider whether 'no serious question as to [its] authenticity can exist,' and whether the contents of the document are 'facts capable of accurate and ready determination by resort to sources whose accuracy cannot

3

reasonably be questioned.'" *James v. Bradley*, 808 F. App'x 1, 3 (2d Cir. 2020) (first quoting *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007); then quoting *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)). "When the court takes judicial notice of documents, it must rely on such documents only for the fact that the statement was made." *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 352 (2d Cir. 2022). Put differently, "even where a public record is properly the subject of judicial notice, a court may take judicial notice only of the content of the record" and "may not rely on the document for the truth of the matters asserted therein." *James*, 808 F. App'x at 3 (citation omitted).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Ji, a citizen of the People's Republic of China, applied for asylum in the United States after experiencing persecution there. (Am. Compl. ¶¶ 17–18). USCIS received Ji's asylum application on February 28, 2022. (*Id.* ¶ 45).

On July 11, 2024, Ji commenced this action seeking relief under the APA and the Mandamus Act. (Compl. dated July 11, 2024 ("Compl."), Dkt. No. 1). Defendants requested a premotion conference ("PMC") to dismiss Ji's original Complaint, (Defs.' Mot. for PMC dated Nov. 1, 2024, Dkt. No. 10), which the Court denied, without prejudice to renewal, after permitting Ji to file an amended complaint. (Order dated Jan. 14, 2025).[2] Ji filed his Amended Complaint on February 14, 2025, which Defendants now seek to dismiss. (Am. Compl.; Defs.' Mot. to Dismiss at 1).

---

[2] The case was transferred to the undersigned on February 7, 2025.

4

When Ji commenced this action, his asylum application had been pending for over two years. (Am. Compl. ¶ 47; Compl. ¶ 47). To date, Ji's asylum application has been pending for approximately three years and eleven months. Ji alleges that the delay is causing him irreparable harm, because he is 63 years old with health issues, and has been separated from his wife and children, one of whom has an intellectual disability, who remain in China. (Am. Compl. ¶¶ 48–50). Ji seeks an order under the APA or the Mandamus Act compelling Defendants to adjudicate his asylum application. (*Id.* ¶¶ 1, 62–76).

## DISCUSSION

**I.     APA Claim**

The APA "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it 'within a reasonable time.'" *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Cir. 2003) (quoting 5 U.S.C. § 555(b)). Accordingly, the APA provides for judicial review of an agency action "unreasonably delayed." 5 U.S.C. § 706(a)(1).

"Plaintiffs must first allege that the agency failed to take a discrete agency action that it is required to take, and, second, that the delay was unreasonable." *Da Costa v. Immigr. Inv. Program Off.*, 80 F.4th 330, 340 (D.C. Cir. 2023) (quotations omitted). Here, there is no dispute from Defendants that they are required to adjudicate Ji's application. The only dispute concerns whether they have unreasonably delayed doing so. "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced

5

task requiring consideration of the particular facts and circumstances before the court."
*Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1100.

To determine whether a delay is unreasonable, courts consider the six factors set forth in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.'"

*Id.* at 80 (citations omitted); *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 84 (2d Cir. 2013), *as amended*, (Mar. 21, 2013) (noting that *TRAC* "set[s] forth [the] test for determining if agency action is unreasonably delayed").

Ji contends that the *TRAC* factors—particularly factors three and five—merit relief in his case. (Am. Compl. ¶ 67; Pl.'s Mem. in Opp'n to Defs.' Mot to Dismiss dated June 30, 2025 ("Pl.'s Opp'n"), Dkt. No. 23-3 at 8–9). Defendants contend that *TRAC* factors one, three, four, and five favor dismissal of Ji's APA claim. (Defs.' Mot. to Dismiss at 17–22). For completeness, the Court analyzes each of the factors.

The first and the second TRAC factors are often considered together, as "[t]he second TRAC consideration . . . 'gives content to the first.'" *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807, 816 (D.C. Cir. 2024) (quoting *In re United Mine Workers of Am. Int'l*

6

*Union*, 190 F.3d 545, 549 (D.C. Cir. 1999)). Here, the Immigration and Nationality Act ("INA") provides timelines for the adjudication of asylum applications. *See* 8 U.S.C. § 1158(d)(5). Under section 1158(d)(5), in the absence of exceptional circumstances, "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed" and "final administrative adjudication of the asylum application, not including administrative appeal, shall be completed within 180 days after the date an application is filed." *Id.* § 1158(d)(5)(A)(ii)–(iii). Although these timelines are not "mandatory"—section 1158(d)(7) provides that there is no private right of action to enforce them—the deadlines are still considered under the second *TRAC* factor. *See Afghan & Iraqi Allies*, 103 F.4th at 817 ("Even when a statutory timeline is clearly precatory, like one establishing a 'sense of Congress' for when the processing of visa applications 'should' be completed, we have still treated the deadline as a 'ruler against which the agency's progress must be measured.' . . . It should play an important role in assessing the reasonableness of the government's pace of adjudication." (quoting *Da Costa*, 80 F.4th at 344)). Ji's asylum application has been pending far longer than the 180 days provided for by statute. Indeed, Ji has not even had an initial interview scheduled, in the nearly four years his application has been pending.

Despite these statutory timelines, USCIS contends that it complies with a rule of reason in adjudicating asylum applications. (Defs.' Mot. to Dismiss at 18–19). In evaluating whether an agency's conduct complies with a rule of reason for purposes of the first *TRAC* factor, courts "evaluate the length of the delay in light of 'the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources

7

available to the agency.'" *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102). A four-year delay, while incredibly unfortunate, is not per se unreasonable—courts have routinely found even longer delays not unreasonable under *TRAC*. *See, e.g.*, *Chen v. Nielsen*, No. 17-CV-7157, 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018) ("[T]he mere delay of roughly four and a half years is an inadequate ground to grant either mandamus or APA relief."); *Maxhuni v. Mayorkas*, No. 23-CV-9076, 2024 WL 3090165, at *4 (S.D.N.Y. June 20, 2024) (concluding five-year delay in adjudicating asylum application not unreasonable under *TRAC*); *Hu v. Sessions*, No. 18-CV-2248, 2020 WL 7486681, at *1, *3 (E.D.N.Y. Dec. 17, 2020) (same); *Almakalani v. McAleenan,* 527 F. Supp. 3d 205, 225 (E.D.N.Y. 2021) ("[C]ourts in this circuit have repeatedly found that delays of as long as five years in USCIS's adjudication of immigration benefits are not unreasonable."). But the delay must be evaluated in light of "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Da Costa*, 80 F.4th at 340 (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102).

Defendants contend that the system USCIS currently uses to process asylum applications—addressing applications through a "last-in first-out" ("LIFO") system, scheduling recently filed asylum applications for interviews ahead of older ones, with a parallel "first-in first-out" ("FIFO") track under which some asylum officers are assigned to the oldest applications—is a rule of reason for purposes of the first *TRAC* factor. (Defs.' Mot. to Dismiss at 18–19).

8

Defendants' argument that the LIFO system (and parallel FIFO track) is a rule of reason consists entirely of citations to district court cases concluding as much. (Defs.' Mot. to Dismiss at 18–19). But the Second Circuit has not addressed this question, and therefore no binding authority compels the conclusion that the LIFO system is a rule of reason, particularly at the motion to dismiss stage.[3]

Defendants' argument necessarily rests entirely on facts outside of the Amended Complaint—Ji's complaint contains no allegations relating to the LIFO system. Throughout their motion, Defendants cite to numerous government webpages, reports, and press releases addressing the adoption of the LIFO system and parallel FIFO track, the rationales for adopting these systems, and other demands facing the agency that allegedly constrain resources available to adjudicate asylum applications. (Defs.' Mot. to Dismiss at 5–13). To the extent Defendants contend that LIFO is a rule of reason based on these materials, Defendants do not explain how the Court may take judicial

---

[3] Several courts have noted that the fact-intensive nature of the *TRAC* inquiry makes it difficult to resolve at the pleading stage, with some courts declining to apply the factors on a motion to dismiss. *See, e.g.*, *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021) ("A claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage."); *Savchuk v. Jaddou*, No. 24-CV-3408, 2024 WL 4183468, at *4 (N.D. Cal. Aug. 20, 2024) ("Although the parties have briefed the *TRAC* factors and disagree whether there has been an unreasonable delay, the Court finds it inappropriate to conduct the fact-analysis at this stage."); *Tigranyan v. Garland*, No. 24-CV-0741, 2024 WL 3740049, at *4 (C.D. Cal. July 1, 2024) ("[B]ecause the *TRAC* factor analysis is necessarily fact-intensive, it is more appropriately applied after some discovery than at the pleading stage."). And at least one court has granted a request for limited discovery to properly assess the *TRAC* factors in a case involving USCIS's adjudication of affirmative asylum applications. *See Munoz-Barba v. Mayorkas*, No. 23-CV-3675, 2024 WL 2818850, at *15–*20 (N.D. Cal. June 3, 2024).

9

notice of them.  Defendants do not attempt to show that these documents contain "facts capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." *James*, 808 F. App'x at 3 (quotations omitted).  And Defendants similarly ignore the limitations on the Court's use of judicially noticed material in evaluating a 12(b)(6) motion to dismiss.  While the Court may take judicial notice of public records and information published on government websites, the Court "may not rely on the document for the truth of the matters asserted therein." *Id.* Taking judicial notice of the documents on which Defendants rely for their only permissible purpose—establishing "that the statement was made," *see Ark. Pub. Emps. Ret. Sys.*, 28 F.4th at 352—the documents do not provide any evidence the Court can use to evaluate the complexity of adjudicating asylum applications and the resources available to USCIS, which the Court must do to determine whether the LIFO system is a rule of reason.  For example, Defendants cite the 2020 Annual Report of the USCIS Ombudsman, (Defs.' Mot. to Dismiss at 7–8), available on the Department of Homeland Security's website, which states:

> Since FY 2012, USCIS resources, along with those of other DHS components, have been substantially taxed due to a surge of foreign nationals attempting to enter the United States at and between ports of entry who, once apprehended, express a fear of returning to their home countries, thereby warranting a fear screening.
> . . . .
> . . . [B]etween FY 2016 to FY 2019, the Asylum Division has needed to temporarily assign on average 475 asylum officers each year in response to other program needs within USCIS, including, among other things, the operational and legal imperative to conduct fear screenings at the border. All these factors have impacted USCIS' ability to address its affirmative asylum backlog.

10

Citizenship & Immigr. Servs. Ombudsman, *Annual Report 2020* 43–45 (June 30, 2020), https://perma.cc/2LJ7-PGF3.  Even if the Court takes judicial notice of the report, the Court may only rely on it for the fact that the report *said* that USCIS's resources were taxed and the report *said* that USCIS had to reassign asylum officers to conduct fear screenings at the border.  The fact that the report said something does not make it so.  To assess the "resources available to the agency" under the first *TRAC* factor, the Court would need to consider the statements in these materials for their truth, which it cannot do on a motion to dismiss.  Accordingly, based only on the allegations in the Amended Complaint and the materials of which the Court may take judicial notice (subject to the limitation that they may not be considered for their truth), the first and second *TRAC* factors favor Ji.  *See, e.g.*, *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 454 (6th Cir. 2022) ("At the Rule 12(b)(6) stage, we cannot conclude that the U-visa-application determination and the bona-fide adjudication are 'extremely complex and labor-intensive task[s].'" (quoting *Mashpee Wampanoag Tribal Council, Inc.,* 336 F.3d at 1100)); *Dumlu v. Edlow*, No. 25-CV-0056, 2025 WL 3190886, at *8 (C.D. Cal. Oct. 2, 2025) ("These facts—for which Defendants cite reports from the USCIS ombudsman and Department of Homeland Security inspector general, USCIS press releases, and a letter from USCIS to an elected representative—are not alleged in the FAC or properly subject

11

to judicial notice. On the current record, the Court cannot say that USCIS's system is a rule of reason justifying the delay in Plaintiff's case.").[4]

The third and fifth *TRAC* factors, often considered together, require consideration of "the nature and extent of the interests prejudiced by the delayed adjudication." *Xu v. Cissna*, 434 F. Supp. 3d 43, 53–54 (S.D.N.Y. 2020). The third *TRAC* factor provides that "delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake." *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80. Ji contends that his health and welfare are jeopardized by USCIS's delay, because there is a "risk of progressive decline" of his own health in addition to "the consequences of being separated from his immediate family as he himself becomes elderly." (Pl.'s Opp'n at 8; Am. Compl. ¶ 67). Ji has been suffering from colorectal polyps, and as he grows older, Ji will likely require more extensive medical care and will need access to better medical insurance. (Am. Compl. ¶¶ 49, 52). In addition to his health concerns, Ji also alleges hardship due to separation from his spouse and his children, one of whom suffers from an intellectual disability. (Pl.'s Opp'n at 8–9; Am. Compl. ¶ 50). Ji's circumstances, while incredibly difficult, are

---

[4] *Da Costa* comes to a different result based on the statements of USCIS in materials on its website. 80 F.4th at 336, 340–41. This result may have been compelled by the D.C. Circuit's different view on the proper use of judicially noticed materials from government websites, which diverges from that of the Second Circuit. *Compare Cannon v. District of Columbia*, 717 F.3d 200, 205 n.2 (D.C. Cir. 2013) (taking judicial notice of the "contents" of a document on a government website), *with United States v. Strock*, 982 F.3d 51, 63 (2d Cir. 2020) ("[W]hile the district court could have taken judicial notice of the GAO report, it should only have do[ne] so in order to determine *what statements it contained . . . not for the truth of the matters asserted* therein." (quotations omitted)), *and James*, 808 F. App'x at 3.

12

not unique for an asylum applicant—Ji's health concerns stem primarily from aging, and family separation is unfortunately common among those seeking asylum. *See, e.g., Yang v. Houghton*, No. 21-CV-5485, 2021 WL 5879033, at *2 (E.D.N.Y. Dec. 13, 2021) ("There is nothing exceptional in having a lengthy family separation in a case where parents seek asylee status."); *De Oliveira v. Barr*, No. 19-CV-1508, 2020 WL 1941231, at *5 (E.D.N.Y. Apr. 22, 2020) ("The fact that the plaintiffs experience 'anxiety and emotional distress' could just as easily be true for every other noncitizen whose asylum application has been delayed."). Accordingly, the third and fifth *TRAC* factors weigh only slightly in favor of Ji.[5]

Under the fourth *TRAC* factor, the Court "consider[s] the effect of expediting delayed action on agency activities of a higher or competing priority." *Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80. Relief may be inappropriate where "a judicial order putting [Plaintiff] at the head of the queue simply moves all others back one space and

---

[5] Defendants contend that the third and fifth *TRAC* factors support dismissal because Ji's alleged harms do not set him apart from other asylum applicants. (Defs.' Mot. to Dismiss at 20). Ji still raises concerns that implicate human health and welfare and demonstrates prejudice to his interests from delay. The fact that the harms alleged by Ji are not unique does not mean they are given no weight.

produces no net gain." *In re Barr Laboratories, Inc.*, 930 F.2d 72, 75 (D.C. Cir. 1991).[6] With respect to this factor, Defendants rest their argument in part on the declaration of Nashwati Nirahu, Chief of Staff of the New York Asylum Office, which they have attached to their motion to dismiss. (Defs.' Mot. to Dismiss at 17).[7] The Court may not consider the declaration in resolving the motion to dismiss. And without it, Defendants cannot establish that adjudicating Ji's application would have the effect of jumping his application ahead of others in the queue. Accordingly, the fourth *TRAC* factor is neutral.

Finally, under the sixth *TRAC* factor, the Court considers whether there is "any impropriety lurking behind agency lassitude, although it need not find any in order to hold that agency action is unreasonably delayed." *Da Costa*, 80 F.4th at 345 (quotations omitted). Ji does not allege any bad faith by Defendants, and the Amended Complaint

---

[6] Defendants contend that "[e]ven if all the other *TRAC* factors militate in favor of finding delay undue, it is appropriate to deny relief where the competing priority—or fourth *TRAC* factor—would jump an applicant ahead of others and produce no net gain." (Defs.' Mot. to Dismiss at 17 (quotations omitted)). In *Afghan & Iraqi Allies v. Blinken*, 103 F.4th 807 (D.C. Cir. 2024), the D.C. Circuit clarified that denial of relief is not required merely because the fourth *TRAC* factor favors dismissal. *Id.* at 819 ("[B]ecause agencies have only finite resources, any order to step up activity in one program may harm others. Yet this concern can go only so far—agency resources always are limited, and we have never suggested that the possibility of their shifting is always enough to make any *TRAC* relief inappropriate.").

[7] Defendants also cite a press release from USCIS's website on the LIFO system, as well as several district court cases evaluating claims of unreasonable delay in adjudicating affirmative asylum applications and concluding that the fourth *TRAC* factor favors Defendants. (Defs.' Mot. to Dismiss at 17). But the press release may not be relied upon for its truth, and the Second Circuit has not addressed this question. Moreover, these documents provide no indication of where Ji is in the queue, so they cannot establish that compelling USCIS to adjudicate Ji's asylum application would have the effect of jumping his application ahead of others.

does not indicate any impropriety by Defendants.  Accordingly, the sixth *TRAC* factor is neutral.  *See id.* at 346 (concluding that the sixth *TRAC* factor is neutral where plaintiffs did not "plausibly allege government misconduct").

On this record, none of the *TRAC* factors favor Defendants.  Factors one, two, three, and five slightly favor Ji, and factors four and six are neutral.  Accordingly, Defendants' motion to dismiss is denied with respect to Ji's APA claim.

## II.   Mandamus Claim

Ji seeks an order compelling Defendants to adjudicate his asylum application pursuant to the Mandamus Act, 28 U.S.C. § 1361.  (Am. Compl. ¶¶ 69–76).  "[M]andamus is an extraordinary remedy, intended to aid only those parties to whom an official or agency owes 'a clear nondiscretionary duty.'"  *Escaler v. U.S. Citizenship & Immigr. Servs.*, 582 F.3d 288, 292 (2d Cir. 2009) (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)).  "Mandamus may be awarded only if the plaintiff proves that (1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available."  *Benzman v. Whitman*, 523 F.3d 119, 132–33 (2d Cir. 2008).

Defendants contend that Ji does not have a clear right to the relief he seeks and therefore is not entitled to mandamus. (Defs.' Mot. to Dismiss at 22–23).[8] The Court agrees.

As noted earlier, there is no private right of action to enforce the statutory timelines for asylum determinations contained in section 1158(d)(5). Section 1158(d)(7) provides "[n]othing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." Because section 1158(d)(7) expressly disclaims a private right of action to enforce the timelines for asylum determinations, Ji cannot establish a "clear right" to the relief he seeks. *See, e.g.*, *Wu v. Mayorkas*, No. 22-CV-4436, 2024 WL 3557695, at *3 (E.D.N.Y. July 24, 2024) ("Because Section 1158(d)(7) of the INA explicitly disclaims a private right of action, mandamus relief is unavailable."); *Zheng v. Garland*, No. 22-CV-6039, 2024 WL 333090, at *4 (E.D.N.Y. Jan. 29, 2024) ("[B]ecause Section 1158(d) does not create a legally enforceable right or benefit, mandamus relief is unavailable."). Accordingly, Ji has failed to, and

---

[8] Defendants seek dismissal of Ji's mandamus claim under either 12(b)(1) or 12(b)(6). (Defs.' Mot. to Dismiss at 22 n.8). The Court analyzes Ji's mandamus claim under Rule 12(b)(6), joining the courts that have concluded that it is the proper vehicle for evaluating whether a plaintiff has satisfied the requirements for mandamus relief. *See Mu v. U.S. Citizenship & Immigr. Servs.*, No. 23-CV-2067, 2023 WL 4687077, at *3 (E.D.N.Y. July 22, 2023) ("Even though the Court has subject matter jurisdiction to consider Plaintiff's mandamus claim, her mandamus claim fails on the merits."); *Zheng v. Garland*, No. 22-CV-6039, 2024 WL 333090, at *4 (E.D.N.Y. Jan. 29, 2024) (collecting cases).

16

cannot, state a claim for mandamus relief, and Defendants' motion to dismiss Ji's mandamus claim is granted. Ji's mandamus claim is dismissed with prejudice.

## CONCLUSION

For the reasons explained above, Defendants' motion to dismiss is granted in part and denied in part. The Court grants Defendants' motion to dismiss Ji's mandamus claim. This dismissal is with prejudice, as repleading cannot cure the defects in Ji's mandamus claim. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) ("The problem with Cuoco's causes of action is substantive; better pleading will not cure it. Repleading would thus be futile."). Defendants' motion to dismiss Ji's APA claim is denied.

SO ORDERED.

*/s/ Sanket J. Bulsara*
SANKET J. BULSARA
United States District Judge

Date:  January 22, 2026
       Central Islip, New York